UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:21-CV-95-FDW-DCK

| | |
|---|---|
| TONYA CAMPBELL, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> FIVE STAR QUALITY CARE – NORTH ) <br> CAROLINA, LLC, FIVE STAR SENIOR ) <br> LIVING, INC., ) <br> ) <br> Defendants. ) <br> ) | ORDER |

THIS MATTER is before the Court on Defendants' Five Star Quality Care – North Carolina, LLC and Five Star Senior Living, Inc. (collectively, "Defendants") Motion to Dismiss for Lack of Jurisdiction or in the Alternative, Motion to Stay and Compel Arbitration pursuant to Rules 12(b)(1), (3), and/or (6) of the Federal Rules of Civil Procedure, Local Rule 7.1, and the Federal Arbitration Act ("FAA"), 9. U.S.C. §§ 1-4. (Doc. No. 8). Plaintiff Tonya Campbell ("Plaintiff") opposes the motion. (Doc. No. 10). In their Reply Brief, Defendants informally request Rule 11 sanctions. (Doc. No. 11). The motion has been fully briefed and is ripe for review. (Docs. No. 8, 9, 10, 11, 12, 13, 15). For the following reasons, the Court administratively DENIES Defendants' Motion to Dismiss as moot without prejudice, GRANTS Defendants' Motion to Stay and Compel Arbitration, and DENIES Defendants' request for Rule 11 sanctions.

I. BACKGROUND

Plaintiff filed this action against Defendants, her former employer, in the Superior Court for Mecklenburg County, North Carolina, asserting claims under the North Carolina Retaliatory Discrimination Act and for wrongful discharge in violation of North Carolina public policy. (Doc.

1

No. 1). Defendants removed this action to the United States District Court for the Western District of North Carolina, Charlotte Division, pursuant to 28 U.S.C. §§ 1332, 1441(b), and 1446. (Doc. No. 1). Defendants responded to the Complaint seeking dismissal for lack of jurisdiction. Defendants also argue in the alternative to stay the proceedings and compel arbitration based on what they contend is a document executed by the parties agreeing to arbitrate any claims among them. (Doc. No. 8). Plaintiff opposes the motion and asserts she never signed an agreement to arbitrate claims relating to her employment or termination thereof. (Doc. No. 10). In their reply brief, Defendants' informally request Rule 11 sanctions based on Plaintiff's alleged failure to provide factual evidence to support her opposition to arbitration. (Doc. No. 11).

## II. ANALYSIS

A. Defendants' Motion to Dismiss

1. Standard of Review

Defendants' motion seeks dismissal based on the existence of a valid arbitration agreement. The Federal Arbitration Act ("FAA") establishes a policy favoring arbitration. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). The FAA provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2018). The FAA requires that agreements to arbitrate be in writing, but such agreements do not have to be signed "if the parties otherwise commit themselves by act or conduct." Dillon v. BMO Harris Bank, N.A., 173 F. Supp. 3d 258, 263 (M.D.N.C. 2016) (finding that the FAA imposes no requirement that a written arbitration agreement be signed by the party to be charged) (citing Real Color Displays, Inc. v. Universal Applied Techs. Corp., 950 F. Supp. 714, 717 (E.D.N.C. 1997)).

2

The FAA requires courts to stay proceedings and compel arbitration in the event of a refusal to comply with a valid agreement to arbitrate. 9 U.S.C. § 3 (2018). "In determining a motion to compel arbitration, the court may consider matters outside of the pleadings, if necessary." Witness Insecurity, LLC v. Hale, No. 5:12-CV-293-JG, 2013 WL 12162297, at *3 (E.D.N.C. Sept. 27, 2013). The Supreme Court has held that "courts must rigorously enforce arbitration agreements according to their terms." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 233 (2013) (internal quotation omitted). The court must compel arbitration if four elements are met: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidence by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the [opposing party] to arbitrate the dispute. Galloway v. Santander Consumer USA, Inc., 514 U.S. 938, 944 (1995). On the other hand, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960). See also AT&T Tech., Inc. v. Commc'ns Workers, 475 U.S. 643, 648 (1986); Johnson v. Circuit City Stores, Inc., 148 F.3d 373, 377 (4th Cir. 1998); Arrants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997). The party seeking to compel arbitration bears the burden of proving that a valid arbitration agreement exists. See Dillon, 173 F. Supp. 3d at 263. "The initial burden on a proponent of an arbitration agreement is not high." See id. at 269 (quoting United States v. Hassan, 742 F.3d 104, 133 (4th Cir. 2014)); see also Fed. R. Evid. 901. The court must be satisfied there is an agreement to arbitrate. See 9 U.S.C. § 4; see also Dillon, 173 F. Supp. 3d at 269. The party opposing arbitration bears the burden of proving that "the claims at issue are unsuitable for arbitration." Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 81 (2000). The opponent "must unequivocally deny that there was an

arbitration agreement and produce evidence to substantiate the denial." Dillon, 173 F. Supp. 3d at 264 (citation omitted). "This burden on the opponent only arises, however, after the proponent produces credible admissible evidence which satisfies the Court that there was an arbitration agreement." Id. "This standard is akin to the burden on summary judgment." Chorley Enters, Inc., 807 F.3d at 564; accord Erichsen v. RBC Capital Mkts., LLC, 883 F. Supp. 2d 562, 566 (E.D.N.C. 2012). Where a party challenges the validity of the signature appearing on an arbitration agreement, it is appropriate for the district court, rather than an arbitrator, to decide whether the signature is forged and if that party has agreed to arbitrate his or her claim. Gregory v. Interstate/Johnson Lane Corp., 188 F.3d 501, 1999 WL 674765 *4-9 (4th Cir. 1999) ("[T]he forgery dispute goes only to the question of arbitrability[,] . . . [and] a court must resolve questions of arbitrability." (citations omitted). In making such determination, the court must "apply ordinary state-law principles that govern the formation of contracts." Id., at *6 (citation omitted).

2. Existence of a Valid Arbitration Agreement

Defendants seek arbitration arguing a valid arbitration agreement exists between the parties as indicated by the "Mutual Agreement to Resolve Disputes and Arbitrate Claims" (the "Agreement"). (Doc. No. 8-1). The Court applies North Carolina contract law to determine whether the Agreement mandates arbitration of Plaintiff's claims. First Options of Chi., Inc., 514 U.S. at 944. Under North Carolina law, "[a] valid contract requires (1) offer, (2) acceptance, (3) consideration and (4) no defenses to formation." Koltis v. North Carolina Dep't of Human., 480 S.E.2d 702, 704 (1997) (citing Copy Prods., Inc. v. Randolph, 303 S.E.2d 87, 88 (N.C. Ct. App. 1983). When each party promises to arbitrate disputes arising from the underlying contract, each promise provides consideration for the other. Millar v. Reliastar Life Ins. Co., 157 F. Supp. 2d 645, 648 (W.D.N.C. 2000).

4

Here, Plaintiff disputes the existence of a valid arbitration agreement. (Doc. No. 10). Specifically, Plaintiff questions the authenticity of her purported signature on the Agreement. Id. In her affidavit, Plaintiff states she never discussed the Agreement with Defendants and asserts "at no time during my employment orientation or during my employment with Defendant, did I sign the Mutual Agreement to Resolve Disputes and Arbitrate Claims." (Doc. NO. 10-1, p. 2). Plaintiff further states she "never agreed orally or in writing to the terms of the *Mutual Agreement to Resolve Disputes and Arbitrate Claims*." Id. Despite Plaintiff's declaration that she did not sign the Agreement, she provides no additional factual basis or—more importantly—any evidence to support this proposition.

Defendants, on the other hand, have produced credible evidence, including unrebutted expert testimony, to demonstrate Plaintiff's signature on the agreement is authentic. Gobena v. CourierNet Inc., No. 3:20-CV-290-RJC-DSC, 2021 WL 1917132, at *5 (W.D.N.C. Feb. 24, 2021) (finding the plaintiff failed to produce sufficient evidence to substantiate the denial of her signature). Defendants provided an affidavit from Ms. Mashanda Patterson, Executive Director of Defendant Five Star Quality Care. (Doc. No. 9). In her declaration, Ms. Patterson asserts she is a custodian of all employment documentation including the Agreement in question. Id. Ms. Patterson attests "it has been the Facility's practice to require new employees to sign the Agreement." Id. Ms. Patterson also attests Plaintiff signed the Agreement at her employment orientation and that "the signature on the signature page of the Arbitration Agreement is a genuine signature by [Plaintiff]." Id.

Plaintiff's execution of the Agreement is also supported by Board Certified Document Examiner, Emily J. Will, who examined thirty-three uncontested documents containing Plaintiff's hand-printed name. (Doc. No. 9-5.) Based on her analysis. Ms. Will concluded "the evidence

5

provides very strong support for the proposition that the questioned hand printed name on [the Agreement] was written by [Plaintiff]." Id. at 7.

Notably, Plaintiff does not dispute the authenticity of any of the thirty-three documents containing the hand-printed name of Plaintiff used by Ms. Will. Moreover, Plaintiff does not dispute Ms. Will's expertise, evaluation process, or her expert determination that the hand printed name was written by Plaintiff. Instead, she offers only her own statement that she never signed the Agreement. Other than her bare assertion, Plaintiff's statement that the signature on the Agreement is not hers is unsupported under this record. See Jackson v. Univ. of Phoenix, Inc., No. 5:13-CV-736-BO, 2014 WL 672852, at *1 (E.D.N.C. Feb. 20, 2014) (finding that "plaintiff's loose allegation that his arbitration acknowledgement signature is fraudulent . . . is wholly unconvincing in light of defendant's evidence."); Cook v. General Elec. Co. GE Aviation, No. :09-CV-400-BO, 2010 WL 4885115, at *4 (E.D.N.C. Nov. 23, 2010) (finding plaintiff's unsupported denial failed as a matter of law to undermine the validity of the arbitration agreement); Dillon, 173 F. Supp. 3d at 264. Therefore, the Court finds the parties—including Plaintiff—agreed to the terms of the Agreement and are required to submit this dispute to arbitration. Under the record here, the Court finds that dismissal is not appropriate and instead grants that portion of the motion seeking a stay and an order to compel arbitration.

B. Rule 11 Sanctions

In addition to moving to compel arbitration, Defendants impliedly request that this Court grant Rule 11 sanctions and argue there is no factual evidence corroborating Plaintiff's denial. (Doc. No. 11). The Court directs Defendants' attention to the text of Fed. R. Civ. P. 11(c)(2), which provides that a "motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). The

advisory committee's notes further support the need to file a separate motion: "request for sanctions must be made as a separate motion, *i.e.*, not simply included as an additional prayer for relief contained in another motion." Fed. R. Civ. P. 11, advisory committee's note to 1983 amendment, subdivision (b) and (c).

Here, Defendants failed to file a separate motion, which—standing alone—is a sufficient basis for denial of the relief sought. See Boyton v. Xerox Commercial Sols., LLC, No. 3:17-CV-505-RJC-DCK, 2018 WL 4001287, at 5* (W.D.N.C. July 31, 2018) (denying defendant's request for Rule 11 sanctions because they included their request "as an additional prayer for relief contained in another motion."). Accordingly, this portion of Defendants' motion is denied.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss or in the alternative, Motion to Stay and Compel Arbitration (Doc. No. 8) is DENIED in part and GRANTED in part. Specifically, Defendants' Motion to Dismiss is administratively DENIED as moot without prejudice and Defendants' Motion to Stay and Compel Arbitration is GRANTED. Defendants' request for sanctions is DENIED.

IT IS FURTHER ORDERED that this matter is STAYED for twelve months, and the parties shall promptly proceed to arbitration. The parties shall submit status reports to the Court every ninety (90) days. The dispute must be resolved within twelve (12) months from the date of this Order.

IT IS SO ORDERED.

Signed: November 18, 2021

_____
Frank D. Whitney
United States District Judge